Annabelle BOONE, Ronald Boyce, Gary L. Cole, Thelma Clark, John Cumens, Scott B. Derr, Claude Dupree, John Gebhart, Jerry Ginn, George Harrigan, Bernice Hayman, Mary A. Hirneisen, Morris Hitchens, James Hudson, Paul Huff, Richard L. Hunter, Jr., Mildred Jackson, Walter Janowski, Richard Jenkins, Michael Joswick, Edwin P. Mampe, Earl Marshall, Philip Mitchener, Doris Moyer, Ellis Peirson, Delores Pierce, Edith B. Rathbone, Robert Rosenberger, Wayne R. Warrington, Eugene Weber, George Wilfong, Addison Williams

v.

OY PARTEK AB, a Finnish Corporation, et al.

Nos. 96C–05–227, 96C–02–127, 96C–03–181, 95C–11–121, 96C–06–218, 96C–07–226, 95C–12–089, 96C–03–193, 96C–03–252, 96C–03–050, 96C–03–180, 96C–06–050, 96C–01–083, 96C–03–049, 96C–03–269, 96C–08–065, 96C–04–251, 96C–03–253, 96C–07–018, 96C–02–125, 96C–02–155, 94C–08–247, 96C–01–011, 96C–06–171, 95C–12–057, 96C–07–224, 96C–08–072, 96C–04–112, 96C–07–168, 95C–03–269, 96C–01–067, 96C–05–268.

Superior Court of Delaware, New Castle County.

Submitted: May 15, 1997.

Decided: Sept. 4, 1997.

Thomas C. Crumplar, Vincent J.X. Hedrick, II, Jacobs & Crumplar, P.A., Wilmington, Delaware, for plaintiffs.

Michael Evan Jaffe, Jill R. Newman, Arent Fox Kintner Plotkin & Kahn, Washington, DC, Warren B. Burt, Michael F. Duggan, Warren B. Burt & Associates, Wilmington, DE, for defendant, Oy Partek Ab.

BABIARZ, Judge.

This is the Court's opinion regarding Oy Partek Ab's motion to dismiss for lack of personal jurisdiction. Oy Partek Ab argues that Delaware's long arm statute, 10 *Del.C.* § 3104, and the Due Process Clause of the

Constitution do not support the exercise of jurisdiction in this matter. In accordance with this opinion Oy Partek Ab's motion is **DENIED.**

### I.

This lawsuit arises from the plaintiffs' alleged exposure to asbestos in Delaware. All of the plaintiffs worked at either Haveg Industries in Marshallton, Delaware or Amoco/Avisun in New Castle, Delaware. The asbestos used in these plants, known as anthophyllite asbestos, was produced by defendant Oy Partek Ab (hereinafter "Partek"), a Finnish corporation.

Partek acquired its asbestos mine in Paakkila, Finland in 1959 and mined the anthophyllite asbestos until 1975 when the mine was closed for economic reasons. Partek, itself, did not sell or distribute the asbestos to Delaware. Instead, Partek had a contract with Huxley Development Corporation, a New York firm (hereinafter "Huxley"), which gave Huxley the exclusive right to sell Partek's asbestos in the United States. Huxley was an independent company over which Partek had no control. Huxley would purchase asbestos from Partek, already bagged and labeled, F.O.B. Helsinki. Huxley would then ship the asbestos to ports in New York, Baltimore or Philadelphia. Huxley was the entity that found customers for Partek's asbestos and any inquiries made to Partek from United States buyers regarding its asbestos were turned over the Huxley. Huxley distributed asbestos to approximately ten customers in the United States including Haveg and Avisun.

As a result of contracting illnesses related to asbestos, plaintiffs brought suit against several parties including Oy Partek Ab. Specifically, plaintiffs allege that Partek, the manufacturer of the asbestos, failed to properly label the asbestos by warning of its dangerous propensities. In addition, plaintiffs charge the bags that the asbestos was shipped in were defective in that they easily broke causing excess exposure to the asbestos fibers. In response, Partek has raised the defense of lack of personal jurisdiction. According to Partek, personal jurisdiction

over them is barred by both Delaware's long arm statute, 10 *Del.C.* § 3104,[1] and the Fourteenth Amendment of the United States Constitution.

## II.

Before this Court may address the merits of Partek's motion, the Court must first determine whether Partek is collaterally estopped from asserting lack of personal jurisdiction in this case. In 1985, during an unrelated asbestos law suit involving different plaintiffs, Partek filed a similar motion to dismiss for lack of personal jurisdiction. *Merganthaler v. Asbestos Corp. of America,* Del.Super., C.A. No. 81C–OC–104, Poppiti, J. (Aug. 30, 1985). In that case, the court determined that personal jurisdiction over Partek was proper under 10 *Del.C.* § 3104(c)(4) and that the exercise of such jurisdiction did not offend the due process clause. Plaintiffs argue that since neither the facts nor the law has changed since the *Merganthaler* decision, Partek is collaterally estopped from re-litigating the issue of personal jurisdiction.

 When the use of collateral estoppel advances the claims of the plaintiff as opposed to the defendant it is known as offensive collateral estoppel. *Chrysler Corp. v. New Castle County,* Del.Super., 464 A.2d 75, 81 (1983). Offensive collateral estoppel is designed to protect parties from having to relitigate identical issues and thereby promote judicial economy. *Id.* (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)). However, there are several considerations that may militate against the use of this doctrine, including issues of fairness. *Chrysler Corp.,* 464 A.2d at 82. As a result, the use offensive collater-

al estoppel is left to the broad discretion of the trial court. *Id.* In instances where there have been changes in the controlling legal principles surrounding the controversy, the court should decline to exercise this discretion. *Id.* at 83 (citing *Montana v. U.S.,* 440 U.S. 147, 161, 99 S.Ct. 970, 977, 59 L.Ed.2d 210 (1979)).

 The parties cite a plethora of factors that courts have considered when addressing collateral estoppel. However, it is unnecessary to delve into these because this Court determines that the use of offensive collateral estoppel is inappropriate in this instance. This is so because Partek's arguments arise from changes in the legal principles surrounding personal jurisdiction that occurred post *Merganthaler.* Thus, in the interest of fairness this Court finds it is necessary to address Partek's jurisdictional arguments.

## III.

 In a motion to dismiss for lack of *in personam* jurisdiction the plaintiffs bear the burden of showing the basis for jurisdiction. *Greenly v. Davis,* Del.Supr., 486 A.2d 669, 670 (1984); *Harmon v. Eudaily,* Del.Super., 407 A.2d 232, 233 (1979). This burden is satisfied if the plaintiffs make a prima facie showing that Delaware's long-arm statute confers jurisdiction. *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,* Del.Super., 685 A.2d 724 (1996). In assessing whether the exercise of jurisdiction is appropriate, the duty of the Court is two fold. First, it must determine whether jurisdiction is appropriate under Delaware's long arm statute. And, second, it must evaluate whether asserting such jurisdiction would offend the Due Process Clause of the

---

1. The pertinent parts of 10 *Del.C.* § 3104 provide:

 (b) The following acts constitute legal presence within the State. Any person who commits any of the acts hereinafter enumerated thereby submits to the jurisdiction of the Delaware courts....

 (c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

 (1) Transacts any business or performs any character of work or service in the State;
 (2) Contracts to supply services or things in this State;
 (3) Causes tortious injury in the State by an act or omission in this State;
 (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; ....

Constitution. *Carlton Investments v. TLC Beatrice International Holdings, Inc.*, Del. Ch., C.A. No. 13950, Allen, C., 1996 WL 608492 (Oct. 16, 1996); *Mumford v. Mumford*, Del.Super., C.A. No. 93C–06–032, Terry, J., 1995 WL 108885 (Feb. 6, 1995). In making this determination the Court must view all factual disputes in a light most favorable to plaintiff. *Outokumpu, supra.*

## IV.

 In line with modern *in personam* jurisdiction philosophies Delaware's long arm statute, 10 *Del.C.* § 3104, has been divided into two main categories: general and specific jurisdiction. Sections 3104(c)(1), (c)(2) and (c)(3) have been deemed to be specific jurisdiction provisions. *Outokumpu, supra; Colonial Mortgage Service Co. v. Aerenson*, 603 F.Supp. 323, 327 (D.Del.1985); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1466 (D.Del.1991). Specific jurisdiction is at issue when the plaintiff's claims arise out of acts or omissions that take place in Delaware. *Applied Biosystems, Inc.*, 772 F.Supp. at 1467; *Colonial Mortgage Service Company*, 603 F.Supp. at 327 n. 2. In this circumstance, jurisdiction is based on the relationship between the forum and the controversy. *Macklowe v. Planet Hollywood, Inc*, Del.Ch., C.A. No. 13689, Steele, V.C., at 7–8, 1994 WL 586838 (Oct. 13, 1994) (citation omitted).

 Section 3104(c)(4), on the other hand, has been deemed a general jurisdiction provision. *Outokumpu*, 685 A.2d at 727–28; *Mayhall v. Nempco, Inc*, Del.Super., 91C–10–018, Steele, V.C., 1994 WL 465545 (July 29, 1994); *Chaplake Holdings, Ltd. v. Chrysler Corp.*, Del.Super., C.A. No. 94C–04–164, Babiarz, J., 1995 WL 653510 (Aug. 11, 1995). General jurisdiction is at issue when the plaintiff's claims are unconnected with the nonresidents' activities. *Chaplake, supra; Mayhall, supra.* In this instance jurisdiction is based on the relationship between the forum and one of the parties; the forum's connection with the controversy is immaterial. *Macklowe, supra* (citation omitted).

Applying the specific and general jurisdiction dichotomy to the facts of this case leads Partek to conclude that Delaware's long arm statute does not confer jurisdiction over it in this case. Partek argues that the *Merganthaler* decision, which found that jurisdiction was appropriate under § 3104(c)(4), is flawed. This is so, according to Partek, because § 3104(c)(4) is deemed to be a "general jurisdiction" statute. General jurisdiction, Partek continues, requires that the defendant's contacts with the state be "current" in order to properly exercise personal jurisdiction. Because Partek maintained no contacts with Delaware at the time this suit was initiated, it argues that jurisdiction under § 3104(c)(4) is inappropriate. Instead, Partek suggests the *Merganthaler* rationale is more consistent with a "stream of commerce" theory. According to Partek, jurisdiction based on a stream of commerce is specific rather than general jurisdiction. While § 3104(c)(1) is Delaware's most analogous specific jurisdiction section, Partek argues, it requires that Partek itself have contacts with Delaware. Because Partek's only acts were national in scope, contracting with Huxley to be its sole United States distributor, Partek asserts § 3104(c)(1) is inapplicable.

Plaintiffs, on the other hand, argue that the *Merganthaler* court properly found jurisdiction over Partek under § 3104(c)(4). According to plaintiffs, Partek's jurisdictional activity does not have to occur contemporaneously with the filing of suit. Instead, the fact that Partek derived revenue from Delaware at the same time plaintiffs were exposed to Partek's product is sufficient to confer jurisdiction under § 3104(c)(4). Additionally, plaintiffs argue that the Court also has jurisdiction over Partek under § 3104(c)(1). Plaintiffs assert that two contacts Partek had with Delaware are sufficient to uphold jurisdiction under this section. First, plaintiffs indicate that two of Partek's employees visited Delaware in 1971 and 1972 to promote Partek's product and visit local plants. Second, plaintiffs suggest that Partek's designation of Huxley as exclusive sales representative, combined with the delivery of their product in the same condition as it was when it left the mines, cause Huxley's con-

tacts to be imputed to Partek.[2] After careful consideration of the matter, this Court concludes that § 3104(c) does confer jurisdiction over Partek in this case.

For jurisdictional purposes, Partek is similar to a manufacturer who places products in the stream of commerce. The stream of commerce theory was designed to confer jurisdiction "in products liability cases in which the product has traveled through an extensive chain of distribution before reaching the ultimate consumer." *Renner v. Lanard Toys Limited*, 33 F.3d 277, 280 (3rd Cir.1994) (citations omitted). This theory rests on a specific rather than general jurisdiction rationale. *Id.*

However, the specific jurisdiction provisions of § 3104 do not confer jurisdiction in this case. Section 3140(c)(1), which provides for jurisdiction over one who transacts business or performs work in Delaware, requires that some act on the part of the defendant must have occurred in Delaware and also that plaintiff's claims arise out of that act. *Outokumpu*, 685 A.2d at 729. When a manufacturer passes title to goods to a third party outside of Delaware it is not deemed to have performed an act in this State. *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, Del.Supr., 513 A.2d 764 (1986). Because Partek passed title to Huxley in Helsinki it did not act in this State as required by this section.[3]

An analysis of §§ 3104(c)(2) and (c)(3) leads to similar conclusions. Section 3104(c)(2) requires the act of contracting to supply services or things in the State. While an act as simple as shipping goods to Delaware is sufficient under § 3104(c)(2), *Moore v. Little Giant Industries, Inc.*, 513 F.Supp. 1043, 1046 (D.Del.1981), it is clear that this section also requires that the defendant per-

form the act in this State, *Outokumpu*, 685 A.2d at 729. Again, when a manufacturer passes title of goods to a third party outside of this jurisdiction it cannot be said the manufacturer has acted in Delaware. Finally, section 3104(c)(3) requires that a tortious act or omission occur in this State in order to confer jurisdiction. However, in a products liability action, when a foreign manufacturer designs, manufactures, labels and packages a product it does so outside of Delaware. *Moore*, 513 F.Supp. at 1046; *Applied Biosystems*, 772 F.Supp. at 1467. Accordingly, section 3104(c)(3) poses a similar obstacle to jurisdiction in that Partek manufactured, labeled and packaged its product in Finland.

Additionally, this Court agrees that when personal jurisdiction is based on a general jurisdiction theory, the timing of the defendant's contacts with the state are of the utmost importance. This is so because a finding of general jurisdiction requires that a corporation engage in sufficient activities in this State to establish a "general presence." *Chaplake, supra.* However, once established, this general presence is not everlasting. To the contrary, when a defendant only has general jurisdictional contacts with a state they may withdraw from that state for jurisdictional purposes. *Gregoire v. Schleicher & Co. International*, C.A. No. 90–4720, Buckwalter, DJ, at 5, 1991 WL 168644 (E.D.Pa., Aug. 22, 1991); *Yancey v. National Trust Co., Ltd.*, Del.Ch., C.A. No. 2142, Jacobs, V.C., at 14, 1993 WL 155492 (May 7, 1993).

However, this Court cannot conclude that § 3104 fails to confer jurisdiction in this case. Delaware's long arm statute, 10 Del.C. § 3104, was created to provide residents a means of redress against those not subject to personal service within the State.

**2.** Plaintiffs' also argue § 3104(c)(2) and (c)(3) provide jurisdiction in this instance. However, as indicated within this Court need not resort to these sections in order to determine whether § 3104 provides jurisdiction.

**3.** This is not to say that the defendant must always perform an act in this State. Indeed, it is entirely possible for jurisdictional purposes that a defendant acts in this State *via* its agent. *Outokumpu*, 685 A.2d at 729–30. This can occur in

two ways. Plaintiffs can show the defendant had dominion and control of the actor or plaintiffs can provide evidence of the standard principle and agent relationship. *Id.* While plaintiffs argue that Huxley is the agent of Partek for purposes of this motion they have failed to produce any evidence to support this conclusion. Consequently, this Court will not explore whether there were jurisdictional contacts under an agency theory in this matter.

*Harmon*, 407 A.2d at 236. In order to effectuate this intent, this section should be construed liberally so as to provide jurisdiction to the maximum extent possible. *Mobil Oil Corp. v. Advanced Envtl. Recycling Technologies, Inc.*, 833 F.Supp. 437, 443 (D.Del. 1993); *Mid–Atlantic Mach. & Fabric, Inc. v. Chesapeake Shipbuilding, Inc.*, Del.Super., 492 A.2d 250, 255 (1985); *Waters v. Deutz Corp.*, Del.Super., 460 A.2d 1332, 1337 (1983). In fact, the only limit placed on § 3104 is that it remain within the constraints of the Due Process Clause. *Transportes·Aereos de Angola, v. Ronair, Inc.*, 544 F.Supp. 858, 864 (D.Del.1982); *Jeffreys v. Exten*, 784 F.Supp. 146, 151 (D.Del.1992); *Moore*, 513 F.Supp. at 1047–48. Partek does not deny that by placing goods in the stream of commerce a manufacturer may be subject to personal jurisdiction in a state where that product causes injury. Indeed, it is clear that the stream of commerce theory is consistent with the due process clause. *World–Wide Volkswagen, Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Asahi Metal Industry Co. Ltd. v. Super. Ct. of Cal., Solano County*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Renner v. Lanard Toys Limited*, 33 F.3d 277 (3rd Cir.1994). Inasmuch as the stream of commerce theory is consistent with the due process clause it must also provide for jurisdiction under § 3104.

■ The problem is that the "stream of commerce" theory does not fit neatly into any section of § 3104. On the one hand jurisdiction under a stream of commerce theory is consistent with general jurisdiction. The theory requires that there be evidence of some intent or purpose on behalf of the manufacturer to serve the Delaware market. *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559. Because this requires the relationship between the forum and the defendant be analyzed, it is general jurisdiction by nature. On the other hand, the stream of commerce theory is consistent with specific jurisdiction. Only when the manufacturer's product enters the forum state and injures a consumer therein is it acceptable to exercise jurisdiction over the manufacturer under this theory. *Id.* As this requires that the relationship between the forum and the contro-

versy be analyzed it is consistent with specific jurisdiction. While this mix of specific and general jurisdiction makes it difficult to determine what sub-section of § 3104 applies in this case, the Supreme Court of this State, in *LaNuova D & B, S.p.A. v. Bowe Co., Inc.*, Del.Supr., 513 A.2d 764 (1986), has presented a fitting solution.

■ In *LaNuova*, the Supreme Court was faced with determining whether an Italian roofing manufacturer, whose product was delivered to a United States distributor in Italy, was subject to jurisdiction under § 3104. *Id.* The Court recognized that specific jurisdiction over the manufacturer was inappropriate because the manufacturer had no direct contacts with Delaware. *Id.* at 768. Because the manufacturer established and implemented a warranty program for its product, and such warranties were distributed in Delaware, the Court concluded that the manufacturer engaged in a persistent course of conduct justifying jurisdiction under § 3104(c)(4). *Id.* However, the import of the *LaNuova* holding is not that a warranty can confer jurisdiction under § 3104(c)(4). Instead, it is the fact that the *LaNuova* Court recognized, absent the warranties, the difficulty one would have in obtaining jurisdiction over a foreign manufacturer under § 3104. In *dicta* the Court stated:

> It is conceivable that a tort claim could enjoy a dual jurisdictional basis under (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4) were sufficiently extensive to reach the transactional level of (c)(1) and there was a nexus between the tort claim and transaction of business or performance of work.

*LaNuova*, 513 A.2d at 768 n. 3. Thus, when a manufacturer has sufficient general contacts with Delaware and the plaintiffs' claims arise out of those contacts, jurisdiction is appropriate under § 3104(c)(1) and (c)(4). Additionally, because the stream of commerce theory relies on specific rather than general jurisdiction, the timing of contacts is irrelevant and the manufacturer cannot remove itself from Delaware for jurisdictional purposes.

It is clear that this solution best encompasses all of the intricacies of the stream of

commerce theory, taking into account the relationship between the manufacturer and the forum and the relationship between the controversy and the forum. However, one must take great care not to overemphasize §§ 3104(c)(1) or (c)(4) under this analysis. It is not important that the indicia of activity under § 3104(c)(4) rise to a level of "general presence" as usually required. Instead, the enumerated activities in this section should be analyzed to determine whether there is an intent or purpose on the part of the manufacturer to serve the Delaware market with its product. Likewise, when analyzing § 3104(c)(1) it is not important that the manufacturer itself act in Delaware. Instead, if the intent or purpose on behalf of the manufacturer to serve the Delaware market results in the introduction of the product to this State and plaintiff's cause of action arises from injuries caused by that product, this section is satisfied.

■ This Court concludes that Delaware's long arm statute, via §§ 3104(c)(1) and (c)(4), provides for the exercise of jurisdiction over Partek. Under § 3104(c)(4) Partek exhibited an intent and purpose to serve the Delaware market. Plaintiff has shown that Partek engaged Huxley to be its exclusive distributor of asbestos to the United States. Implicit in this agreement is the fact that Huxley solicit business from the Country as a whole, including Delaware. The result of this solicitation, according to plaintiff, is that Partek earned at least $270,000 from its sales of asbestos and was shipping up to 50 tons per month of asbestos into this State over the course of ten years. Thus, not only did Partek implicitly solicit business from Delaware, it also derived substantial revenue from Delaware and engaged in a persistent course of conduct in this State. Additionally, it is clear that § 3104(c)(1) is satisfied in this instance. Partek's actions resulted in asbestos being shipped into this State at the rate of 50 tons per month over the course of 10 years and plaintiffs' claims arise out of their exposure to this asbestos. Consequently this Court concludes that plaintiffs have met their burden of showing 10 Del.C. § 3104 confers jurisdiction over Partek in this case.

## IV.

■ Having concluded that § 3104 confers jurisdiction in this instance this Court must next analyze whether asserting jurisdiction over Partek is consistent with the Due Process Clause of the Constitution.

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations. By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*Carr v. Pouilloux, S.A.*, 947 F.Supp. 393, 395 (C.D.Ill.1996) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985)). Determining whether the exercise of personal jurisdiction is appropriate under the Due Process clause requires a two part inquiry. This Court is required to first determine whether the defendant has the requisite minimum contacts with the forum state, and then, whether asserting personal jurisdiction over the defendant is fair and reasonable. *Asahi*, 480 U.S. 102, 107 S.Ct. at 1030–33.

In line with this analysis, Partek argues that asserting jurisdiction over it in this instance would violate its Due Process rights for two reasons. First, Partek argues that it does not have sufficient minimum contacts with this State. Second, Partek asserts that exercising personal jurisdiction over it would violate traditional notions of fair play and substantial justice and would not be fair and reasonable. However, this Court concludes that there are sufficient minimum contacts between Partek and the State of Delaware such that the maintenance of suit in this State would not violate Partek's Due Process rights. In addition, this Court concludes that requiring Partek to defend an action in Delaware would not violate traditional notions of fair play and substantial justice.

## A. *Minimum Contacts*

Partek argues that in the case *sub judice* its contacts with Delaware are simply not sufficient to satisfy Due Process. According to Partek, the appropriate test for minimum contacts is found in *Asahi Metal Ind. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Partek asserts that, in a plurality decision, the Court set out specific standards for measuring purposeful availment, that is, there must be evidence that supports an intent or purpose to serve the Delaware market. Partek indicates that examples of such evidence include: (1) designing the product for the market in the State; (2) establishing channels for giving regular advice to customers in the State; (3) advertising in the forum state; and (4) marketing the product through a distributor who has agreed to serve as the sales agent in the State. Because there is no evidence that indicates Partek engaged in any of the enumerated activities, Partek contends that exercising jurisdiction in this case would violate its Due Process rights. Partek adds that its engagement with Huxley as its national distributor is inconsequential. According to Partek, contacts with the United States as a whole simply cannot confer upon an individual state the power to exercise jurisdiction.

▆▆▆ The "constitutional touchstone" in a personal jurisdiction inquiry "remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Asahi*, 480 U.S. 102, 107 S.Ct. at 1030 (citing *Burger King Corp.*, 471 U.S. 462, 105 S.Ct. 2174). While the defendant need not be physically present in this state, *Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. 2174, there must be some indication that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958) (citations omitted).

The relevant framework for determining whether a manufacturer has established minimum contacts under a stream of commerce analysis was last addressed by the Supreme Court in *Asahi Metal Ind. Co. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In *Asahi*, the Supreme Court was faced with determining whether the exercise of jurisdiction over a Japanese manufacturer of valve assemblies by a California court was consistent with the Due Process Clause. The Court indicated that under a stream of commerce analysis, it is not sufficient that a defendant manufacturer place a product in the stream of commerce knowing it will enter the forum state. *Id.*, 480 U.S. 102, 107 S.Ct. at 1032. Instead, there must be some act on the part of the defendant "purposefully directed to the forum State" which indicates an "intent or purpose to serve the market in the forum State"; some evidence of "additional conduct" on the part of the defendant is required.[4] *Id.* The *Asahi* Court stated that examples of such conduct include "designing the product for the market of the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.*

▆▆ In the instant case it is clear Partek placed asbestos in the stream of commerce and that asbestos made its way to Delaware. Accordingly, the inquiry turns on whether there is evidence that shows Partek "purposefully directed" this asbestos to Delaware

---

4. It is important to note that an intent or purpose to serve the forum market or "additional conduct" requirement represents a more restrictive view of minimum contacts in a stream of commerce analysis. This view was offered by Justice O'Connor joined by the Chief Justice, Justices Powell and Scalia in a plurality opinion and had been adopted in this State in *Mayhall v. Nempco, Inc.*, Del.Super., C.A. No. 91C–10–018, Steele, V.C., at 5, 1994 WL 465545 (July 29, 1994). Justice Brennan, joined by Justices Blackmun, Marshall and White, offer a less restrictive view. According to Justice Brennan, the stream of commerce theory does not require a showing of "additional conduct." *Asahi*, 480 U.S. 102, 107 S.Ct. at 1034. To the contrary, "as long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi*, 480 U.S. 102, 107 S.Ct. at 1034.

exhibiting an "intent or purpose" to serve the Delaware market.

In fact, Partek has exhibited an intent or purpose to serve the Delaware market. The record reveals that Partek engaged Huxley to be its exclusive distributor of asbestos in the United States. Implicit in this agreement is the fact that Huxley solicit business from the Country as a whole, including Delaware. Thus, not only did Partek anticipate that its product would be distributed to all states including Delaware, it took affirmative steps to direct its product here through this agreement.[5] Partek's intent or purpose to serve the Delaware market is manifest in the fact that its employees made two visits to Delaware in 1971 and 1972. While the purpose of these visits is disputed, it is clear that Partek's employees knew that its asbestos was being shipped into Delaware. Had Partek not intended its product to enter Delaware it certainly would have directed Huxley to stop shipments to this forum after these visits.

However, Partek argues that the contract with Huxley was an exclusive distribution agreement to serve the United States and not Delaware. According to Partek, contacts with the country as a whole are not sufficient to confer jurisdiction in this case. As such, this agreement does not exhibit and intent or purpose to serve the Delaware market.

In *A. Uberti and C. v. Leonardo*, Ariz. Supr., 181 Ariz. 565, 892 P.2d 1354 (1995), *cert. denied*, 516 U.S. 906, 116 S.Ct. 273, 133 L.Ed.2d 194 (1995), the Supreme Court of Arizona addressed this very argument. In an *en banc* decision the Arizona court found that an Italian Manufacturer's intent to distribute its goods throughout the American market was sufficient to satisfy the minimum contacts test under the *Asahi's* analysis. *Id.*, 892 P.2d at 1362. The court came to this conclusion for several reasons. First, the Court recognized that such an argument defies common sense. By targeting the United States as a whole and not any one particular market no State would have jurisdiction over the manufacturer. *Id.* This would allow a foreign company to sell faulty products to United States citizens and never be accountable in any forum where the product caused injury. *Id.* According to the *Uberti* court, to allow one to knowingly and intentionally distribute products in America through an American company and avoid jurisdiction of the American courts by simply ignoring the activities of its distributors is not logical. *Uberti*, 892 P.2d at 1362–63.

The Arizona court noted that such a practice would put American companies at an economic disadvantage. *Id.* at 1363. According to the court, this rule would allow foreign manufacturers to take advantage of the American market while remaining immunized from the liability inherent in defective products. *Id.* The Arizona court opined that such an economic inequity would drive American manufacturers out of business. *Id.* Based on the foregoing the Arizona court concluded that "allowing a defendant that has purposefully exploited the United States market to 'insulate itself from the reach of the forum State's long-arm rule by using an intermediary or by professing ignorance of the ultimate destination of the products' would undermine principles of fundamental fairness and due process." *Uberti*, 892 P.2d at 1363 (citations omitted).

In fact, numerous courts have concluded that a manufacturer who distributes their product through a national or regional distributor have established minimum contacts with the forum state. *See, Tobin v. Astra Pharmaceutical Prod., Inc.*, 993 F.2d 528, 543 (6th Cir.1993), cert. denied sub nom. *Duphar v. Tobin*, 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993); *Warren v. Honda*

**5.** The United States Supreme Court has consistently held that the existence of a distributorship agreement between the defendant and the forum is sufficient to show the defendant had minimum contacts with the forum State. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980) (evidence that a manufacturer serves or seeks to serve the forum market through others is sufficient evidence of

minimum contacts.); *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987) (evidence that a manufacturer is "marketing a product through a distributor who has agreed to serve as the sales agent in the forum State" is the "additional conduct" necessary for a showing of minimum contacts.).

*Motor Co.*, 669 F.Supp. 365, 370 (D.Utah 1987); *Wessinger v. Vetter Corp.*, 685 F.Supp. 769, 777 (D.Kan.1987); *Hall v. Zambelli*, 669 F.Supp. 753, 757 (S.D.W.Va.1987); *Burton v. Subaru of America*, 646 F.Supp. 78 (N.D.Ga.1986); *Waters v. Deutz Corp.*, Del.Super., 460 A.2d 1332, 1337–38 (1983). Consequently, Partek's argument that the distribution agreement was national in scope and cannot confer personal jurisdiction in Delaware must fail. As a result, this Court concludes that Partek, through its distribution agreement with Huxley, has engaged in the additional conduct necessary under the stream of commerce theory so as to establish minimum contacts with Delaware.

### B. *Fairness and Reasonableness*

Finally, this Court must determine whether exercising personal jurisdiction over Partek is fair and reasonable. Partek argues that even if this Court found that there were sufficient contacts in this case, asserting personal jurisdiction over it would violate traditional notions of fair play and substantial justice. Partek recognizes that in assessing the fairness and reasonableness of exercising jurisdiction the Court is required to weigh the burden placed on the defendant, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in efficient resolution of controversies and furthering fundamental social policies. However, Partek indicates that the Supreme Court in *Asahi* made it clear that great emphasis should be placed on the burdens that arise from having to defend an action in a foreign legal system. According to Partek the facts of this case weigh heavily against the exercise of jurisdiction under the fairness and reasonable prong of the Due Process analysis.

■■■ Under the Due Process Clause, in order to properly exercise jurisdiction over a foreign defendant, that defendant's contacts with the forum state "must be such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559. In evaluating the fairness and reasonableness of jurisdiction the court must consider several factors. These include the burden on the defendant, the interest of the forum state in adjudicating the dispute, the plaintiff's interest in obtaining relief, the interest of the interstate judicial system in efficiently resolving disputes, and the combined interest of the sovereigns in advancing "substantial social policies." *Id.* (citations omitted). In this analysis the burden on the defendant is the primary concern. *Id.* This is especially true when the defendant finds itself faced with defending a law suit in a foreign legal system. *Asahi*, 480 U.S. 102, 107 S.Ct. at 1033. However, once minimum contacts have been established, the interests of the plaintiff and the forum will usually favor the exercise of jurisdiction. *Id.* at 114, 107 S.Ct. 1026.

■■■ In this case reasonableness and fairness do favor the exercise of jurisdiction over Partek. The plaintiffs here, exposed to dangerous levels of asbestos, clearly have a significant interest in obtaining relief Moreover, it can hardly be said that requiring a plaintiff, injured in Delaware, to seek relief in a foreign country is consistent with the plaintiff's due process rights. Additionally, Delaware has a strong interest in protecting the health and welfare of its citizens. Exercising jurisdiction over the manufacturer of dangerous products will provide an effective and efficient forum for its citizens while deterring the introduction of other dangerous products to this State. Accordingly, weighing the combined interest of the plaintiffs and Delaware against the burden on Partek leads this Court to conclude that jurisdiction over Partek is reasonable and fair such that it does not violate "traditional notions of fair play and substantial justice."

### V.

In a motion to dismiss for lack of personal jurisdiction the duty is on the plaintiff to show Delaware's long arm statute, 10 *Del.C.* § 3104, confers jurisdiction. After concluding that § 3104 confers jurisdiction, the Court is required to determine whether exercising jurisdiction over the defendant would

violate the Due Process Clause of the Constitution. Here, plaintiffs have shown that 10 *Del.C.* § 3104(c)(1) and (c)(4) in fact confer jurisdiction over Partek in this case. Additionally, as indicated within, this Court concludes that exercising jurisdiction over Partek does not violate Partek's Due Process rights. Accordingly, Oy Partek Ab's motion is **DENIED.**

**IT IS SO ORDERED.**