# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PHILADELPHIA INDEMNITY )
INSURANCE CO. )
          )
       Plaintiff, )
          )
       v. )      C.A. No. N22C-04-200 SKR
          )
AIR VENT, INC. )
          )
       Defendant, Third-Party Plaintiff, )
          )
       v. )
          )
POWERMAX ELECTRIC CO. LTD., )
          )
       Third-Party Defendant. )

Submitted: April 4, 2025
Decided: July 30, 2025

*Upon Third-Party Defendant's Motion to Dismiss*
**GRANTED.**

## MEMORANDUM OPINION AND ORDER

Christopher Viceconte, Esq., Jennifer M. Rutter, Esq., GIBBONS P.C., Wilmington, Delaware. Craig S. Brodsky, Esq., GOODELL, DEVRIES, LEECH & DANN LLP, Baltimore, Maryland. *Attorneys for Defendant and Third-Party Plaintiff Air Vent, Inc.*

Julie M. O'Dell, Esq., Robert J. Katzenstein, Esq. SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware. Thomas M. DeMicco, Esq., WILSON ELSER MOSKOWITZ EDELMAN DICKER LLP, East Meadow, New York. *Attorneys for Third-Party Defendant PowerMax Electric Co., Ltd.*

**RENNIE, J.**

# I. INTRODUCTION

In June 2021, a fire broke out at a residential property, allegedly due to a malfunction of a vent fan installed in the attic. Plaintiff—an insurance company—paid a claim to the owner of the property based on an insurance policy that was in full force and effect at the time of the fire. Plaintiff then brought suit against Defendant, the manufacturer of the attic fan, alleging various theories of product liability. Defendant in turn filed a Third-Party Complaint against Third-Party Defendant—the manufacturer of a motor component contained in the attic fan.

Now before the Court is Third-Party Defendant's Motion to Dismiss the Third-Party Complaint for lack of personal jurisdiction. Because the Delaware long-arm statute does not confer jurisdiction based on the purported "dual jurisdiction" or "stream of commerce" theory, the Motion is **GRANTED**.

# II. FACTUAL AND PROCEDURAL BACKGROUND

## A. THE PARTIES

Third-Party Defendant PowerMax Electric Co., Ltd. ("PowerMax") is a company organized and headquartered in China.[1] PowerMax manufactures fans and

---

[1] Opening Br. Supp. Specially Appearing 3rd-Party Def.'s Mot. Dismiss (D.I. No. 27) [hereinafter "PowerMax's OB"] at 5, Ex. A ¶ 6.

electric fan motors at its facility in Guangdong, China, and exports those products overseas, including to the United States.[2]

Defendant/Third-Party Plaintiff Air Vent, Inc. ("Air Vent") is a Delaware corporation headquartered in Texas.[3] Air Vent is engaged in the business of designing, manufacturing, assembling, testing, inspecting, marketing, distributing, and selling ventilation fans such as the one at issue in this action.[4] From 2003 to 2012, Air Vent purchased over 2 million electric motors from PowerMax to be included into ventilation fans that Air Vent assembled, manufactured, and sold throughout the United States.[5]

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia Indemnity") is a Pennsylvania corporation headquartered in Pennsylvania.[6] Philadelphia Indemnity provided an insurance policy on the subject property that was in full force and effect during all relevant periods.[7]

---

[2] Def.-3rd-Party Pl.'s Answering Br. Opp'n Specially Appearing 3rd-Party Def.'s Mot. Dismiss (D.I. No. 42) [hereinafter "Air Vent's AB"] at 4–5, Ex. A (Brad Holland of Air Vent Affidavit) ¶¶ 3–5.
[3] Compl. (D.I. No. 1) ¶ 4.
[4] Compl. ¶ 4.
[5] Air Vent's AB Ex. A ¶ 3.
[6] Compl. ¶ 1.
[7] *Id.* ¶ 2.

**B. THE UNDERLYING ACTION**

This case arises from a fire that occurred on June 7, 2021, at a property located at 33810 Waterside Drive, Frankford, Delaware.[8] The property was owned by Waterside Property Owners Association, Inc. ("Waterside") and insured by Philadelphia Indemnity.[9] The fire originated at a fan located in the attic of the property and caused substantial damages.[10] The fan was alleged to be an 18-inch diameter Electric Gable Vent Fan 1620 CFM that was designed, manufactured, tested, and sold by Air Vent.[11]

After the fire, Philadelphia Indemnity duly paid a claim that Waterside made under the insurance policy on the property, and consequently, Philadelphia Indemnity became subrogated to the right to recover the loss resulting from the incident.[12] On April 27, 2022, Philadelphia Indemnity filed its Complaint against Air Vent.[13] The Complaint asserts claims of negligence and breach of express and implied warranties based on alleged defects of the attic fan.[14]

---

[8] *Id.* ¶ 2.
[9] *Id.* ¶¶ 7–8.
[10] Compl. ¶ 8.
[11] *Id.* ¶ 6.
[12] *Id.* ¶ 3.
[13] Compl. (D.I. No. 1).
[14] *Id.* ¶¶ 13–21.

## C. THE THIRD-PARTY COMPLAINT

On June 23, 2022, Air Vent filed its Answer to the Complaint, and simultaneously filed a Third-Party Complaint against PowerMax.[15] Air Vent alleges in the Third-Party Complaint that the defective component in the ventilation fan that caused the fire was a motor that PowerMax designed and manufactured.[16] Air Vent asserts claims of implied indemnification, contribution, contractual indemnification, breach of contract, and breach of express warranties.[17]

On December 23, 2022, PowerMax specially appeared and filed a Motion to Dismiss the Third-Party Complaint for lack of personal jurisdiction under Superior Court Civil Rule 12(b)(2).[18] Both parties filed briefs on the Motion,[19] and the Court heard argument on May 22, 2023. On August 2, 2023, the Court issued a letter ruling allowing jurisdictional discovery for the purpose of developing facts "that inform the Court's analyses pursuant to the Delaware long-arm 'dual jurisdiction' and Due Process 'stream of commerce' doctrines."[20]

---

[15] Answer, Affirmative Defenses, and 3rd-Party Compl. (D.I. No. 12) [hereinafter "3rd-Party Compl."].

[16] 3rd-Party Compl. ¶¶ 9, 65–74.

[17] *Id.* ¶¶ 52–86.

[18] Specially Appearing 3rd-Party Def.'s Mot. Dismiss 3rd-Party Compl. (D.I. No. 27).

[19] PowerMax's OB (D.I. No. 27); Air Vent's AB (D.I. No. 42); Reply Br. Supporting Specially Appearing 3rd-Party Def.'s Mot. Dismiss (D.I. No. 49) [hereinafter "PowerMax's Reply"].

[20] August 2, 2023 Letter Order (D.I. No. 54).

On July 2, 2024, after the jurisdictional discovery concluded, PowerMax filed a Supplemental Opening Brief in support of its Motion to Dismiss.[21] On August 14, 2024, Air Vent filed its Supplemental Answering Brief in Opposition to PowerMax's Motion to Dismiss.[22] On October 7, 2024, PowerMax filed its Supplemental Reply Brief.[23] The Court heard oral argument on April 4, 2025.

## III. STANDARD OF REVIEW

In considering a motion to dismiss under Superior Court Civil Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden to prove a non-frivolous basis for the Court's assertion of jurisdiction.[24] The plaintiff satisfies this burden by "making a *prima facie* showing that jurisdiction is conferred by statute."[25] In ruling on a Rule 12(b)(2) motion, the Court must "accept all well-pleaded factual allegations as true, unless contradicted by affidavit, and draw all reasonable inferences in favor of the plaintiff."[26] The facts are interpreted in a light most favorable to the plaintiff.[27]

---

[21] Suppl. Opening Br. Supp. Specially Appearing 3rd-Party Def.'s Mot. Dismiss (D.I. No. 62) [hereinafter "PowerMax's Suppl. OB"].

[22] Suppl. Answering Br. In Opp'n to Specially Appearing 3rd-Party Def.'s Suppl. Br. (D.I. No. 67) [hereinafter "Air Vent's Suppl. AB"].

[23] Suppl. Reply Br. Supp. Specially Appearing 3rd-Party Def.'s Mot. Dismiss (D.I. No. 72) [hereinafter "PowerMax's Suppl. Reply"].

[24] *Mabey v. Crystalite Bohemia, S.R.O.,* 2018 WL 775402, at *3 (Del. Super. Feb. 6, 2018) (internal citations omitted).

[25] *McKamey v. Vander Houten*, 744 A.2d 529, 531 (Del. Super. 1999).

[26] *Wiggins v. Physiologic Assessment Servs., LLC*, 138 A.3d 1160, 1165 (Del. Super. 2016).

[27] *See Mabey,* 2018 WL 775402, at *3.

# IV.  THE PARTIES' CONTENTIONS

## A. POWERMAX'S CONTENTION

PowerMax contends that personal jurisdiction is not proper under Delaware's long-arm statute and it lacks sufficient minimum contacts with Delaware to satisfy the Due Process requirements.[28] PowerMax maintains that it is not subject to general jurisdiction under the long-arm statute because, as a Chinese company with no addresses or offices in Delaware, it is not at-home in Delaware.[29] As for specific jurisdiction, PowerMax argues that the "dual jurisdiction" theory upon which Air Vent relies has no basis in the plain terms of Delaware long-arm statute and thus does not confer jurisdiction.[30] PowerMax further posits that, even assuming that the "dual jurisdiction" is valid under Delaware law, jurisdiction is improper.[31]

Specifically, PowerMax points out that it manufactured the ventilation fan motors in question pursuant to the design specifications provided by non-party DM Asia Inc. ("DM Asia") and sold the motors to DM Asia in China free-on-board.[32] DM Asia then shipped the motors to Air Vent at its facility in Texas, where Air Vent incorporated the motors into its own attic fan products.[33] Air Vent then sold the

---

[28] PowerMax's OB at 9–10, 22–28.
[29] *Id.* at 5–6.
[30] PowerMax's OB at 15, 20–22.
[31] PowerMax's OB at 16–20.
[32] PowerMax's OB Ex. A (Stephy Tsui Affidavit) ¶ 7.
[33] Air Vent's AB at 4–5, Ex. A (Brad Holland Affidavit) ¶¶ 3–5.

completed attic fans to third-party retailers, who in turn sold them in Delaware.[34]

Therefore, while PowerMax's products were put into the stream of commerce and eventually ended up in Delaware, PowerMax insists that it has not taken any actions purposefully directed to Delaware that indicates a specific intent to serve the Delaware market.[35] For the same reasons, PowerMax contends that it does not have sufficient minimum contacts for jurisdiction to arise in Delaware under the Due Process Clause.[36]

## B. AIR VENT'S CONTENTION

Air Vent takes the opposite view, maintaining that jurisdiction is proper in this Court.[37] Air Vent first argues that this Court has adopted the "dual jurisdiction" theory, which permits exercise of jurisdiction over a foreign defendant whose products entered Delaware through the stream of commerce and caused injury.[38] Air Vent thus contends that the long-arm statute requirements are satisfied because PowerMax marketed its products to the United States through distributors and affiliated entities, such as DM Asia, with the expectation that the products would be further sold nationwide, including Delaware.[39]

---

[34] *Id.*
[35] *See* PowerMax's Suppl. OB at 16–18; PowerMax's OB at 16–20.
[36] *See* PowerMax's Suppl. OB at 21–22.
[37] *See generally* Air Vent's AB.
[38] Air Vent's AB at 11.
[39] *Id.* at 13.

Air Vent takes the position that PowerMax's intent to serve the Delaware market is implicit in its distributor's solicitation of business from the United States as a whole.[40] In support, Air Vent cites to case law providing that generally targeting the United States market sufficiently shows an intent to serve the Delaware market, absent evidence of effort to avoid selling products in Delaware.[41] Also, Air Vent argues that there exists sufficient minimum contacts for jurisdiction to comport with due process requirements.[42]

## V. ANALYSIS

In determining the question of personal jurisdiction, Delaware courts employ a two-step analysis.[43] First, we must consider whether jurisdiction is authorized by Delaware's long-arm statute, 10 *Del. C.* § 3104.[44] Next, courts determine whether exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment.[45] The two steps involve independent considerations, and satisfaction of one part does not equate to satisfaction of the requirements of the other.[46]

---

[40] *Id.* at 13–14.
[41] *Id.*
[42] *Id.* at 14–15.
[43] *See Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480–81 (Del.1992).
[44] *Id.*
[45] *Id.*
[46] *Id.* at 483.

**A. JURISDICTION IS IMPROPER UNDER THE PROVISIONS OF THE LONG-ARM STATUTE.**

Delaware's long-arm statute provides in relevant part:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State[.][47]

The first three subsections, Sections 3104(c)(1)–(3), provide for specific jurisdiction, under which a single act or omission by the defendant in Delaware is sufficient for jurisdiction, but the cause of action must arise out of the defendant's in-forum contact.[48] In contrast, Section 3104(c)(4) provides for general jurisdiction,

---

[47] Del. Code tit. 10, § 3104.
[48] *See Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991); *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del.1986).

under which a greater extent of in-state activities are required, but the cause of action may be unrelated to any of the defendant's contacts with Delaware.[49]

PowerMax's contacts with Delaware do not satisfy the requirement of any subsections of the long-arm statute. The underlying action arises out of PowerMax's sales of electric motors, through DM Asia, to Air Vent between 2003 and 2012.[50] Hence, those are the relevant actions for the specific jurisdiction analysis. The requirements of Section 3104(c)(1) are not met because PowerMax did not transact any business or perform any work in Delaware. Similarly in considering Section 3104(c)(2), there is no evidence that PowerMax contracted or offered to supply services or things in Delaware during the relevant 2003-2012 period. Rather, PowerMax conveyed the electric motor products to DM Asia in China, and DM Asia delivered those products to Air Vent in Texas.[51] Even assuming that DM Asia acted as an agent of PowerMax when it sold the electric motors to Air Vent, which PowerMax disputes, PowerMax did not direct any delivery to be made to Delaware. Hence, Section 3104(c)(2) is also not met. As to Section 3104(c)(3), which requires "an act and omission in this State" that causes tortious injury, there is no dispute that PowerMax's manufacturing of the electric motors took place in China.[52] The "act

---

[49] *See Applied Biosystems, Inc.*, 772 F. Supp. at 1466; *LaNuova D & B, S.p.A.*, 513 A.2d at 768.
[50] *See* Air Vent's AB at 4.
[51] Air Vent's AB at 4–5, Ex. A (Brad Holland Affidavit) ¶¶ 3–5, 8.
[52] *See Moore v. Little Giant Indus., Inc.*, 513 F. Supp. 1043, 1046 (D. Del. 1981), *aff'd*, 681 F.2d 807 (3d Cir. 1982) (finding that subsection (c)(3) does not apply because "[i]t is undisputed that

and omission" that allegedly caused tortious injury did not take place in Delaware, so this subsection is also inapplicable.

For its specific jurisdiction analysis, Air Vent presents evidence attempting to show that PowerMax, by itself and through an affiliated Florida company,[53] entered into supplier agreements with various national retailers to sell its fan products throughout the United States, including Delaware.[54] Air Vent also highlights evidence showing that certain fans that PowerMax made was available for purchase in stores located in Delaware.[55] However, those products are retail-ready, complete fans rather than the electric motor components that PowerMax supplied to Air Vent.

Applying those facts to the general jurisdiction provision of the long-arm statute—Section 3104(c)(4)—PowerMax's actions clearly fall short, and Air Vent does not seem to dispute that.[56] Although PowerMax's products are sold in Delaware by retail stores, this does not show that PowerMax "regularly does or solicits business" or "engages in any other persistent course of conduct" in

---

all activities involving the [allegedly defective] ladder's design and manufacture took place in Utah").

[53] Air Vent has produced evidence showing that PowerMax was in a joint venture with the Florida company, King of Fans, Inc. *See* Air Vent's AB Exs. B (PowerMax Website), J (PowerMax Made-in-China Website), K (PowerMax and King of Fans FAQ pages), N (District of Nevada Case finding Joint Venture Relationship between PowerMax and King of Fans). PowerMax disputes that contention. *See* PowerMax's Reply at 5; PowerMax's OB Ex. A ¶¶ 11–14.

[54] Air Vent's Suppl. AB. Exs. 4 (2005 PowerMax-LGS Agreement), 7 (King of Fans-Home Depot Agreement), 8 (2016 King of Fans-Home Depot Agreement).

[55] Air Vent's AB Exs. G (Proof of Purchase of PowerMax Products in Delaware Stores), H (Grainger Product List with PowerMax Products).

[56] Air Vent also does not argue in its briefing that Section 3104(c)(4) provides jurisdiction by itself. *See generally* Air Vent's AB; Air Vent's Suppl. AB.

Delaware.  Nor does the mere availability of PowerMax's products in Delaware show that it "derives substantial revenues" from sales in Delaware.[57]  The record contains no evidence that PowerMax has a sufficiently extensive presence in Delaware to justify general jurisdiction.  PowerMax does not maintain any addresses in Delaware,[58] does not directly sell or ship to anyone in Delaware,[59] and does not advertise or market its business in Delaware.[60]  Hence, Section 3104(c)(4) does not confer jurisdiction.

## B.  DELAWARE'S LONG-ARM STATUTE DOES NOT AUTHORIZE THE "DUAL JURISDICTION" THEORY.

Air Vent does not appear to argue that PowerMax's activities fall under a specific subsection of the long-arm statute.  Instead, Air Vent primarily relies on the "dual jurisdiction" theory, under which jurisdiction supposedly exists when the respective requirements of Section 3104(c)(1) and (c)(4) are partially satisfied.[61]  The concept of "dual jurisdiction" was first introduced by a footnote in the Delaware Supreme Court's decision in *LaNuova D & B, S.p.A. v. Bowe Co.*:

> It is conceivable that a tort claim could enjoy a dual jurisdictional basis under (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4)

---

[57] Air Vent highlighted that, when PowerMax executed certain supplier agreements, it consented to Delaware jurisdiction pursuant to the forum selection clauses contained therein. *See* Air Vent's Suppl. AB Exs. 5, 6.  However, PowerMax's consent was specific to disputes that arose out of those agreements, and Air Vent does not argue that the underlying cause of action is within the scope of those agreements.

[58] PowerMax's Suppl. OB Ex. G (Declaration of Stephy Tsui) paras. 6, 23, 24, 30.

[59] *Id.* paras. 20-21, 34-36.

[60] *Id.* para. 28.

[61] Air Vent's AB at 10–14; Air Vent's Suppl. AB at 14–17.

were sufficiently extensive to reach the transactional level of (c)(1) and there was a nexus between the tort claim and transaction of business or performance of work.[62]

Thereafter, this Court articulated the "dual jurisdiction" theory for the first time in *Boone v. Oy Partek Ab*.[63] *Boone* applied the theory to confer jurisdiction over a foreign asbestos manufacturer when it contracted with a New York distributor and sold up to 50 tons of asbestos to Delaware per month for ten years, causing injuries in Delaware.[64] *Boone* noted that the exercise of jurisdiction based on the manufacturer's actions would have comported with the Due Process Clause under the "stream of commerce" theory expressed by U.S. Supreme Court precedent.[65] However, *Boone* recognized that the "stream of commerce" theory "does not fit neatly into any section of § 3104."[66] In order to snug the due process "stream of commerce" theory into the mold of the long-arm statute, *Boone* cited to the *LaNuova* footnote.[67] According to *Boone*, that footnote stands for the proposition that "when a manufacturer has sufficient general contacts with Delaware and the plaintiffs'

---

[62] 513 A.2d 764, 768 n.3 (Del. 1986). The *LaNuova* Court held that a foreign roofing material manufacturer engaged in persistent course of conduct such that jurisdiction existed under Section 3104(c)(4) when it established and implemented an insured warranty program for its product. *See id.* at 769.

[63] *Boone v. Oy Partek Ab,* 724 A.2d 1150 (Del. Super. 1997) *aff'd*, 707 A.2d 765 (Del. 1998). While the *Boone* decision was written by a well-regarded jurist, it created unintended confusion in Delaware's personal jurisdiction jurisprudence.

[64] 724 A.2d 1150, 1158.

[65] *Boone*, 724 A.2d 1150, 1157–58.

[66] *Id.* at 1157.

[67] *Id.*

13

claims arise out of those contacts, jurisdiction is appropriate under § 3104(c)(1) and (c)(4)."[68]

When explaining how a court should apply the "dual jurisdiction" concept, the *Boone* Court admonished that "one must take great care not to overemphasize §§ 3104(c)(1) or (c)(4) under this analysis."[69] Rather, the key inquiry, according to *Boone*, should be "whether there is an intent or purpose on the part of the manufacturer to serve the Delaware market with its product."[70] Under *Boone*'s ruling, the long-arm statute is satisfied if that intent exists and the product caused an injury.[71]

Since *Boone* was decided, many cases in this Court and the United States District Court for the District of Delaware have applied the "dual jurisdiction" theory in determining the issue of personal jurisdiction over foreign manufacturers.[72] Notably, multiple cases that applied the theory expressed doubt on the cogency of the theory; but those cases eventually followed the theory, primarily because the Supreme Court of Delaware has not rejected it.[73]

---

[68] *Id.*
[69] *Id.* at 1158.
[70] *Id.*
[71] *Id.*
[72] *See, e.g., Diaz Cardona v. Hitachi Koki Co.*, 2019 WL 449698, at *3 n.32 (Del. Super. Feb. 5, 2019) (collecting case applying "dual jurisdiction"); *Mabey v. Crystalite Bohemia, S.R.O.*, 2018 WL 775402 (Del. Super. Feb. 6, 2018); *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F.Supp.2d 365 (D.Del. 2008).
[73] *See Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1352 (Fed. Cir. 2016) ("It may seem counterintuitive that the dual jurisdiction theory does not demand the full satisfaction of any

Notwithstanding previous case law's reliance on the "dual jurisdiction" concept, the Court does not believe it is a correct application of Delaware's long-arm statute. In the District of Delaware's decision in *Round Rock Research LLC v. ASUSTeK Computer Inc.*, Judge Andrews provided a compelling criticism of the theory.[74] First, Judge Andrews criticized *Boone*'s determination that *LaNuova*'s "dual jurisdiction" footnote endorsed the inclusion of "stream of commerce" jurisdiction into the long-arm statute as overreaching:

> It seems to me a reasonable interpretation of this footnote would be that the Supreme Court was doing nothing more than stating the obvious, that is, that the (c)(1) and (c)(4) subsections involve overlapping concepts, and there thus might be times when the set of facts that establishes general jurisdiction under (c)(4) also establishes specific jurisdiction under (c)(1), and thus the jurisdiction would be "dual." Perhaps an interesting observation, but one meaningless for development of the law, and hence properly relegated to a footnote.[75]

Indeed, as Judge Andrews pointed out, "*LaNuova*, on which the theory is based, does not mention 'stream of commerce.'"[76]

---

individual subsection of the Delaware long arm statute. But to date, no Delaware state court has rejected that theory. Indeed, the Delaware Supreme Court has had opportunities to reject the theory, but has declined to do so."); *Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 675 (D. Del. 2014) (opining that the Delaware Supreme Court would accept the "stream-of-commerce" theory of personal jurisdiction under Delaware based on the fact that no Delaware state court has rejected the theory, "even though the theory is not expressly authorized by Delaware's long-arm statute"); *Diaz Cardona*, 2019 WL 449698, at *3 n.32 ("If the 'dual jurisdiction' doctrine adopted by *Boone* is to be further clarified or even overturned, that decision should be made by the Delaware Supreme Court.").

[74] 967 F. Supp. 2d 969, 976 (D. Del. 2013).

[75] *Round Rock Rsch. LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 976 (D. Del. 2013).

[76] *Round Rock Rsch. LLC*, 967 F. Supp. 2d at 977.

Moreover, Judge Andrews noted that, by injecting the constitutional concept of "stream of commerce" into the analysis of the long-arm-statute, the *Boone* ruling violated two established principles of Delaware jurisprudence: "the long arm statute should be separately analyzed from due process considerations, and its interpretation should flow from the statutory language."[77] Further, Judge Andrews pointed out that, although *Boone* was summarily affirmed by the Delaware Supreme Court, it limited its basis for affirmance to Section 3104(c)(4) and did not express approval of the "dual jurisdiction" analysis.[78] Therefore, Judge Andrews declined to recognize "dual jurisdiction" as a valid basis for satisfying the long-arm statute.[79]

For the same reasons articulated by Judge Andrews in his analysis, this Court must reject *Boone*'s interpretation of the long-arm statute. It is clear that the "dual jurisdiction" concept is not based on a reasonable reading of the textual provisions of the long-arm statute; *Boone* even acknowledged that.[80] Therefore, the Court finds that the "dual jurisdiction" concept does not justify exercise of jurisdiction.

Because PowerMax's actions do not meet the requirements of Section 3104(c)(1)–(4), and "dual jurisdiction" is a concept that does not exist in the long-

---

[77] *Id.* at 976.
[78] *Id.*
[79] *Id.* at 977.
[80] 724 A.2d at 1156 (recognizing that the "stream of commerce" theory is a basis for specific jurisdiction, but "the specific jurisdiction provisions of § 3104 [did] not confer jurisdiction" in that case).

arm statute, exercise of jurisdiction over PowerMax would not be proper. Accordingly, PowerMax's Motion to Dismiss is hereby **GRANTED**.

## VI. CONCLUSION

For the foregoing reasons, PowerMax's Motion to Dismiss is hereby **GRANTED.**

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge