# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DERRICK J. ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. S21C-02-011 MHC |
| | ) | |
| EARTH MOVERS, LLC., | ) | |
| *et al.* | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>
Submitted: November 3, 2022
Decided: January 19, 2023

*Upon Consideration of Defendant/Third Party Defendant Oak Ridge Construction and Transport, Inc., Motion to Dismiss,*
### GRANTED.

Roger D. Landon, Esquire, Murphy & Landon, Wilmington Delaware. *Attorney for Derrick J. Ross.*

William R. Adams, Esquire, Dickie, McCamey & Chilcote, P.C., Wilmington, Delaware. *Attorney for Earth Movers, LLC.*

Sarah B. Cole, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware. *Attorney for Oak Ridge Construction and Transport, Inc.*

D. Miika Roggio, Esquire, Wilmington Delaware, Matthew Vodzak, Pro Hac Vice, Esquire, Philadelphia Pennsylvania. *Attorneys for Allan Myers Inc., Allan Myers MD, Inc., Allan Myers Materials Inc., & Allan Myers Materials MD, Inc.*

**CONNER, J.**

## INTRODUCTION

Defendant/Third-Party Defendant Oak Ridge Construction and Transport, Inc., ("Oak Ridge") filed a Motion to Dismiss for lack of personal jurisdiction in the pending action of *Ross v. Earth Movers, LLC.* Allan Myers, Inc. ("Allan Myers")[1] a defendant in the matter, who is joined by Plaintiff and other Defendants, responded in opposition to the motion. Two reasons were advanced in opposition of the motion. First, they argue Oak Ridge waived the defense of personal jurisdiction. Second, the Court is able to exercise personal jurisdiction over Oak Ridge. The Court has reviewed the parties' submissions and the relevant law. For the reasons set forth below, the Court finds that the defense was not waived and jurisdiction over Oak Ridge is improper. Accordingly, Oak Ridges' Motion to Dismiss is **GRANTED.**

## FACTUAL BACKGROUND

### A. Motor Vehicle Collision

This case centers around a motor vehicle collision that occurred on May 31, 2020.[2] At approximately 8:00 p.m. a paving project began on State Route 1.[3] Leroy Yuman ("Yuman") was employed as a dump truck operator for Allan Myers.[4]

---

[1] Collectively, Allan Myers refers to Allan Myers, Inc., Allan Myers MD, Inc., Allan Myers Materials, Inc., and Allan Myers Materials MD, Inc.
[2] Pl. Compl. ¶ 74.
[3] *Id.*
[4] *Id.* ¶ 77.

Yuman was driving a dump truck filled with asphalt from the asphalt plant in Dover, Delaware, to the paving project site.[5] At approximately 10:25 p.m. Yuman deposited the load of asphalt at the paving project site.[6] After depositing the asphalt, Yuman proceeded southbound on State Route 1 to return to the asphalt plant in Dover.[7] However, before leaving the site and entering the roadway, Yuman failed to secure his dump latch, leaving the dump body in a fully extended upward position.[8]

While Yuman was operating the fully extended dump truck southbound on State Route 1, Derrick Ross was operating a 2019 GMC Yukon northbound on State Route 1.[9] Both vehicles were nearing the Paddock Road (State Route 30) overpass.[10] At the time, Ross was driving and his three minor children were passengers in the vehicle.[11] Yuman approached the Paddock Road overpass with the dump body fully extended at approximately 55-60 miles per hour.[12] The extended dump body struck the bottom of the overpass causing it to completely detach from the truck.[13] The dump body came to a resting point seventy feet south of the point of impact on the right shoulder of State Route 1.[14] The dump truck itself continued southbound on

---

[5] *Id.*
[6] *Id.* ¶ 81.
[7] *Id.*
[8] *Id.* ¶ 85.
[9] *Id.* ¶ 87.
[10] *Id.*
[11] *Id.* ¶ 88.
[12] *Id.* ¶ 92.
[13] *Id.* ¶ 93.
[14] *Id.* ¶ 94.

State Route 1 crossing over both lanes into the grassy median area.[15] Approximately two hundred ninety-five feet away from the initial impact, the dump truck then struck the cable barrier in the median, bounced over the cable barrier, and continued to travel southeast into the northbound lanes of travel on State Route 1.[16]

At that same moment, Ross was traveling in the northbound lane when the dump truck suddenly entered his lane of travel.[17] Ross attempted to brake to avoid a collision but was unable to due to the sudden and unexpected entrance of the dump truck in his lane of travel.[18] The front of the dump truck struck the front of the GMC Yukon, pushing it backwards to a final resting place on the right shoulder of northbound State Route 1.[19] After the impact with the GMC Yukon, the dump truck continued to travel eastbound off of the roadway until it ended up in an embankment where it struck a tree and came to a stop.[20]

The impact caused the front of the GMC Yukon to be crushed, the air bags to deploy and the rear window to shatter.[21] All passengers of the GMC Yukon were transported via air lift to hospitals for serious injuries.[22] As a result of the collision,

---

[15] *Id.* ¶ 95.
[16] *Id.* ¶ 96.
[17] *Id.* ¶ 97.
[18] *Id.* ¶ 98.
[19] *Id.* ¶ 99.
[20] *Id.* ¶ 100.
[21] *Id.* ¶ 101.
[22] *Id.* ¶¶ 106-09.

Ross and his three minor children all sustained life-threating injuries requiring extensive medical treatment.[23]

B. Oak Ridge's Involvement

Following some discovery, Oak Ridge was named as a third-party defendant and subsequently a direct defendant in the amended complaint.[24] Oak Ridge purchased the dump truck that was involved in the collision brand new from Worldwide Equipment of South Carolina, Inc., on or about November 27, 2013.[25] Oak Ridge then sold the dump truck to North Carolina Kenworth, Inc. on or about May 30, 2018.[26] North Carolina Kenworth, Inc. then transferred title of the dump truck to MHC Kenworth Raleigh on or about July 12, 2018.[27] MHC Kenworth Raleigh sold the dump truck to J.R. Atkinson Co. on July 12, 2018.[28] J.R. Atkinson Co. then sold the dump truck to Earth Movers some time in August of 2018.[29]

At some point after November 27, 2013 and prior to the collision on May 31, 2020, the dump truck's PTO control system was modified or altered from its original condition.[30] These modifications are alleged to have rendered the PTO control

---

[23] *Id.* ¶ 110.
[24] Oak Ridge's Mot. to Dismiss ¶ 2.
[25] Pl. Am. Compl. ¶ 297.
[26] Allan Myers' Third-Party Compl. ¶ 34.
[27] *Id.* ¶ 35.
[28] *Id.* ¶ 36.
[29] *Id.* ¶ 37.
[30] Pl. Compl. ¶ 299.

system unsafe, dangerous, and/or defective.[31] The modifications appeared to have removed the original PTO control system which included a control lever that required the operator to make a secondary action before the dump truck bed could lower or raise.[32] The modification included removing the old, two-step system, and replacing it with a toggle switch which enables the operator to lower or raise the dump bed without a secondary action.[33] It is unknown if Oak Ridge is responsible for the modifications to the PTO system.[34]

## PROCEDURAL HISTORY RELEVANT TO OAK RIDGE

On February 2, 2022, Allan Myers filed a third-party complaint against multiple parties, including Oak Ridge. Plaintiff, Ross, filed an amended complaint on April 11, 2022, adding Oak Ridge as a direct defendant. On April 27, 2022, Oak Ridge filed an answer which did not raise personal jurisdiction. On May 6, 2022, Oak Ridge filed an amended answer which both denied personal jurisdiction and raised lack of jurisdiction as an affirmative defense.[35]

On May 19, 2022, Oak Ridge filed a motion to dismiss for lack of personal jurisdiction. The Court allowed the parties to engage in jurisdictional discovery. Oak

---

[31] *Id.* ¶ 302.
[32] *Id.* ¶ 303.
[33] *Id.* ¶ 304.
[34] Oak Ridge's Renewed Mot. to Dismiss ¶ 13.
[35] Oak Ridge's Am. Answer ¶ 17; p. 11 Affirmative Defense VIII.

Ridge renewed its Motion to Dismiss for lack of personal jurisdiction on August 10, 2022.

Allan Myers filed a response in Opposition to Oak Ridge's Motion to Dismiss on September 9, 2022. The Plaintiff and other Defendants filed responses joining in support of Allan Myers Response.

## WAIVER OF PERSONAL JURISIDCTION DEFENSE

As a threshold matter, Plaintiff, who joined Allan Myers' Motion in Opposition, argues that Oak Ridge failed to assert the defense of lack of personal jurisdiction in its initial pleading and therefore waived the defense.

In making their argument, Plaintiff relies on *Hornberger Management Co. v. Haws & Tingle General Contractors, Inc.*[36] In *Hornberger*, the defendant filed a motion to dismiss on various grounds, including lack of personal jurisdiction, without leave of the court and over three weeks after the extended deadline for dispositive motions.[37] The Court held that the defense of personal jurisdiction was waived because defendant's conduct was inconsistent with such a defense.[38] The Court concluded the defendant submitted to jurisdiction of the court by participating in an arbitration process without raising jurisdiction, filing a motion for a trial de

---

[36] 768 A.2d 983 (Del. Super. 2000).
[37] *Id.* at 989.
[38] *Id.*

novo, entering into a case scheduling order, participating in discovery, stipulating to an extension of time for filing case dispositive motions and failing to file the motion before the deadline.[39] In this case, Plaintiff contends Oak Ridge did not raise the defense of personal jurisdiction in its "first defensive move,"[40] and therefore the motion to dismiss should be denied.

Oak Ridge argues that Superior Court Civil Rule 12(h) allowed for the timely amended Answer asserting the affirmative defense of personal jurisdiction.[41] Additionally, Oak Ridge argues that Superior Court Civil Rule 12(f) is pertinent because at no time did this Court or another party involved in the matter object to Oak Ridge's assertion of the personal jurisdiction defense.[42]

## A. Applicable Law

Superior Court Civil Rule 12(h) states, in pertinent part:

> (h) Waiver or Preservation of Certain Defenses. (1) A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived . . . (B) if it is neither made by motion under this Rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.[43]

---

[39] *Id.*
[40] *Id.* at 988.
[41] Oak Ridge's Supplemental Reply in Supp. of Mot. to Dismiss ¶ 7.
[42] *Id.* ¶ 8.
[43] Super. Ct. Civ. R. 12(h).

7

Superior Court Civil Rule 15(a) states:

> (a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the Court otherwise orders.[44]

In *Plummer v. Sherman*,[45] the Delaware Supreme Court analyzed the rules stated above and determined that when an answer does not raise personal jurisdiction, but the answer is amended within 20 days after it is served to raise personal jurisdiction, the defense is not waived.[46]

## B. Oak Ridge Did Not Waive the Defense

Here, Oak Ridge filed their first amended answer within 20 days after it was served. Therefore, pursuant to Superior Court Civil Rule 15(a), Oak Ridge was not

---

[44] Super. Ct. Civ. R. 15(a).

[45] 861 A.2d 1238, 1244 (Del. 2004).

[46] Also relevant to the waiver of personal jurisdiction issue but not discussed in *Plummer v. Sherman* is Superior Court Civil Rule 12(f) which states, "(f) Motion to strike. -- Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these Rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the Court's own initiative at any time, the Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

required to seek leave of the Court to amend and Oak Ridge was allowed to amend as a matter of course to raise personal jurisdiction. Since Oak Ridge properly amended their answer pursuant to Superior Court Civil Rule 15(a), under Rule 12(h)(1), personal jurisdiction was not waived.[47]

In addition, the case at hand can be differentiated from *Hornberger*. As mentioned above, the defendant in *Hornberger* filed their motion to dismiss for lack of personal jurisdiction over three weeks after the extended deadline for dispositive motions. The defendant also appeared to submit to personal jurisdiction by continually participating in Court processes. This is not the case for Oak Ridge. Although Oak Ridge did not initially assert lack of personal jurisdiction, they did so in the amended answer. Oak Ridge did not wait an extended period of time after the deadline, nor did it continue to participate in Court processes that would indicate submission to jurisdiction.

Plaintiff emphasized the language from *Hornberger* that stated defendant must challenge personal jurisdiction when he makes his *first defensive move*.[48] Oak Ridge did assert personal jurisdiction in their amended answer, as what could be

---

[47] Additionally, Plaintiff's argument that he could not have objected to Oak Ridge's amended answer containing the lack of personal jurisdiction defense because Oak Ridge did so "unilaterally without a motion to amend" is irrelevant. Pl. Resp. in Opp'n to Oak Ridge's Supplemental Reply ¶ 15. As discussed, Oak Ridge was allowed to amend once as a matter of course under Super. Ct. Civ. R. 15(a).

[48] Pl. Resp. in Opp'n to Oak Ridge's Mot. to Dismiss ¶ 15; *see also Hornberger Mgmt. Co.*, 768 A.2d at 988 (emphasis added).

considered part of their first defensive move. Since Oak Ridge properly raised the defense of lack of personal jurisdiction in their amended answer it was not waived.

## STANDARD OF REVIEW

When a motion to dismiss challenges personal jurisdiction, the burden is on the plaintiff to show a basis for the court's jurisdiction over the nonresident defendant.[49] This burden is satisfied by the plaintiff if they can make out a prima facie case that the court's exercise of personal jurisdiction is proper.[50] A two-step analysis is used to determine if Delaware courts can obtain personal jurisdiction.[51] First, the Court must consider whether jurisdiction under the Delaware Long-Arm Statute, 10 *Del. C.* § 3104, applies and then the Court must evaluate whether subjecting a defendant to jurisdiction in Delaware violates the due process clause of the Fourteenth Amendment.[52] The Court views all of the factual disputes in a light most favorable to the plaintiff.[53]

---

[49] *Galasso v. Cont'l Bank*, 1986 WL 7988, at *1 (Del. June 23, 1986).
[50] *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1154 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998).
[51] *Id.*
[52] *Id.* at 1154-55.
[53] *Id.* at 1155.

# ANALYSIS

A. <u>Delaware Long Arm Statute</u>

*1. General and Specific Personal Jurisdiction*

The Delaware Long Arm Statute provides when a court may exercise personal jurisdiction over a nonresident defendant. The statute states, in pertinent part, that jurisdiction is appropriate if the defendant:

> (1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in this State; (3) causes tortious injury in the State by an act or omission in this State; (4) causes tortious injury in the State or outside of the State by any act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenues from services, or things used or consumed in the State.[54]

The statute can be further separated into two main categories.[55] Sections 3104(c)(1), (c)(2), and (c)(3) are specific jurisdiction provisions.[56] Section 3104(c)(4) is a general jurisdiction provision.[57]

General jurisdiction is based on the relationship between the forum and the party.[58] However, Allan Myers is not seeking general personal jurisdiction under

---

[54] 10 *Del. C.* § 3104(c).
[55] *Boone,* 724 A.2d at 1155.
[56] *Id.*
[57] *Id.*
[58] *Id.*

11

subsection (c)(4).[59] Therefore, general personal jurisdiction need not be discussed further.

Specific jurisdiction is triggered when the plaintiff's claims arise out of acts or omissions, by the defendant, that take place in Delaware.[60] Specific jurisdiction under subsections (c)(1)-(3) is not met. As stated in an affidavit by Michael Muckenfuss, the President of Oak Ridge, Oak Ridge is not and has never been a Delaware corporation or maintained a principal place of business in Delaware.[61] Oak Ridge has no physical or mailing address, phone number, bank account, office, employees, or other personnel in the State of Delaware.[62] It does not own, lease, use, or otherwise possess any office, warehouse, or other real or personal property in the State of Delaware.[63] In addition, Oak Ridge does not sell any materials in Delaware, nor does it transport materials, transact, or solicit business in Delaware.[64] Lastly, no revenue is derived from services or things consumed in Delaware.[65]

Additionally, Allan Myers alleges that since Oak Ridge sold the dump truck to Kenworth, a multi-state dealer with a website searchable by Delaware residents, that Oak Ridge should have known the truck could later reach Delaware, and

---

[59] Allan Myers' Resp. in Opp'n to Oak Ridge Mot. to Dismiss at 4 n.1.
[60] *Boone*, 724 A.2d at 1155.
[61] Muckenfuss Aff. ¶¶ 2, 7.
[62] *Id.* ¶ 8.
[63] *Id.*
[64] *Id.* ¶ 10.
[65] *Id.* ¶ 11.

therefore, Oak Ridge should be subject to jurisdiction in Delaware.[66] Oak Ridge cannot be subject to specific jurisdiction just because the company it sold the dump truck to has an internet presence which could have caused the dump truck to be seen by people in Delaware. Delaware law requires that the out-of-state defendant committed an act or omission in Delaware that resulted in the tortious injury.[67] "When considering whether the defendant acted in the forum state, courts . . . require 'something more' from the defendant than 'the knowledge that their website could be viewed or that their product could be used in the forum state.'"[68] The defendant needs to target the contents of the website toward Delaware in a manner that would purposefully avail itself of doing business with Delaware, not just North America generally.[69] Oak Ridge's possible knowledge that the truck it sold to Kenworth may be posted on Kenworth's website and subsequently viewed in Delaware is not sufficient to establish jurisdiction.[70]

Therefore, Allan Myers is left with a dual jurisdiction argument to establish this Court can exercise personal jurisdiction over Oak Ridge.

---

[66] Allan Myers' Resp. in Opp'n to Oak Ridge's Mot. to Dismiss at 5 n.2 & ¶ 13.
[67] *Rotblut v. Terrapinn, Inc.*, 2016 WL 5539884, at *6 (Del. Super. Sept. 30, 2016).
[68] *Id*. at *5.
[69] *Id*. at *6.

13

## 2. Dual Jurisdiction

The Delaware Supreme Court first recognized dual jurisdiction in 1986. Several cases have since expanded upon the notion of dual jurisdiction. When a dual jurisdiction argument is advanced, the Court examines jurisdiction under both 10 *Del. C.* §3104(c)(1) and (c)(4). The Court in *LaNuova D & B, S.p.A v. Bowe Co., Inc.*, explained in dicta, ". . . [a] tort claim could enjoy a dual jurisdictional basis under (c)(1) and (c)(4) if the indicia of activity set forth under (c)(4) were sufficiently extensive to reach the transactional level of (c)(1) and there was a nexus between the tort claim and transaction of business or performance of work."[71]

Our Courts have broadly construed jurisdiction to the maximum extent possible to protect the citizens of Delaware. "In fact, the only limit placed on § 3104 is that it remain within the constraints of the Due Process Clause."[72] So, when a defendant has sufficient contacts with Delaware and the plaintiffs' claim arises out of those contacts, dual jurisdiction is appropriate.[73] When analyzing if dual jurisdiction is satisfied, the court looks to whether there was an intent or purpose on the part of the defendant to serve the Delaware market.[74] If the intent to serve the

---

[71] *LaNuova D&B, S.p.A. v. Bowe Co., Inc.,* 513 A.2d 764 n.3 (Del. 1986).
[72] *Boone*, 724 A.2d at 1157.
[73] *Id.*
[74] *Id.* at 1158.

Delaware market results in the introduction of a product to Delaware and the cause of action arises from an injury caused by that product, dual jurisdiction is satisfied.[75]

In *Boone v. Oy Partek* Ab, the Court held that the long arm statute was satisfied via § 3104(c)(1) and (c)(4) because the defendant solicited business from all fifty states, including Delaware.[76] Shipments of up to fifty tons of asbestos entered Delaware monthly for ten years and caused injury to the plaintiff.[77] As a result of the shipments, the defendant obtained approximately $270,000 in revenue from the sale of asbestos to Delaware.[78] The Court reasoned that not only did the defendant implicitly solicit business from Delaware, it also derived substantial revenue from Delaware in a persistent course of conduct.[79]

The Court in *Diaz Cardona v. Hitachi Koki Co., LTD*, also found dual jurisdiction was satisfied.[80] In *Diaz Cardona*, the defendant set up a Delaware corporation as its exclusive U.S. distribution site for the purpose of selling products in the states, including Delaware.[81] This established an intent to serve Delaware.[82] Although there was no specific data regarding the sale of the defendant's nail guns

---

[75] *Id.*
[76] *Id.*
[77] *Id.*
[78] *Id.*
[79] *Id.*
[80] *Diaz Cardona v. Hitachi Koki Co., Ltd*., 2019 WL 449698, at *4 (Del. Super. Feb. 5, 2019).
[81] *Id.*
[82] *Id.*

in each state, the fact that it was a mass marketed and mass produced consumer product offered for sale through Lowes stores supported a strong inference that significant amounts had been sold in every state, including Delaware.[83] Since the plaintiff was injured using one of the nail guns in Delaware, that was also sold in Delaware, the Court held that the case satisfied the dual jurisdiction requirements.[84]

In this case, there is a complete lack of evidence that Oak Ridge does or solicits business in Delaware, engages in any other course of conduct in Delaware, or derives substantial revenue from things used or consumed in Delaware. Not only is there no "persistent course of conduct in Delaware,"[85] there is no conduct directed at or in Delaware at all.

The case that is most analogous to Oak Ridge's connections, or lack thereof, with Delaware is *Fischer v. Hilton*.[86] Although decided before dual jurisdiction was recognized, it was analyzed in the same manner, using both § 3104(c)(1) and (c)(4). *Fischer* involved the sale of a truck from a seller in Ohio to a buyer in Delaware.[87] The defendant seller neither conducted nor solicited any other business in Delaware.[88] The Court held that the sale of one truck, which would ultimately end

---

[83] *Id.*
[84] *Id.*
[85] 10 *Del. C.* § 3104(c)(4).
[86] 549 F. Supp. 389 (D. Del. 1982).
[87] *Id.* at 390.
[88] *Id.* at 391.

up in Delaware, was not enough to satisfy the jurisdictional requirements.[89] "The nonresident must regularly do or solicit business, or engage in a persistent course of conduct."[90]

Here, Oak Ridge had no way of knowing the truck would ultimately be used in Delaware. And to reiterate, Oak Ridge did not regularly do business or engage in persistent conduct in Delaware. Specific, general, and dual jurisdiction are not met under Delaware's Long Arm Statute.

## B. Constitutional Analysis

Even if the requirements of the Long Arm Statute were met, due process considerations would preclude the exercise of jurisdiction. The second step in the personal jurisdictional analysis is the Due Process requirement. This step is further broken down into two prongs, minimum contacts and fairness.

### 1. Minimum Contacts

The first prong of the constitutional analysis is determining whether Oak Ridge engaged in minimum contacts with Delaware. In other words, did Oak Ridge

---

[89] *Id*. at 392.
[90] *Id.*

act in a manner to purposefully avail itself of the privilege of conducting activities within Delaware.[91]

A state court is able to exercise personal jurisdiction over a nonresident defendant as long as minimum contacts exist between the defendant and the forum state.[92] Due process does not allow a court to issue a binding judgment *in personam* against a defendant with which the state has no contacts, ties, or relations.[93] The concept of minimum contacts "protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status . . . ."[94]

In determining whether there are minimum contacts, the courts look to see if there is a substantial connection between the defendant and the forum state. The contacts must come by actions of the defendant purposefully directed towards the forum state. Conduct between the defendant and forum state includes but is not limited to performing services in the forum state, soliciting business either through salespersons in the forum state or advertising reasonably calculated to reach the

---

[91] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)(citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).
[92] *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).
[93] *Id.* at 319.
[94] *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

forum state, making regular sales to residents of the forum state, and seeking to serve the forum state's market.[95]

*World-Wide Volkswagen Corp. v. Woodson* provides the Court with a basis for what equates to minimum contacts. In *World-Wide Volkswagen Corp.* a products liability suit was instituted in an Oklahoma state court by the plaintiffs for personal injuries that were sustained in Oklahoma after an automobile accident.[96] An Audi was purchased by the plaintiffs in New York while they were residents of New York.[97] After a year of owning the Audi in New York, the plaintiffs moved from New York driving the Audi to their new home in Arizona.[98] On the way to Arizona the plaintiffs were passing through Oklahoma when another car struck the rear of their Audi causing a fire which severely injured the plaintiffs.[99]

The Supreme Court found that there was a total absence of the affiliating circumstances that are necessary to exercise state-court jurisdiction.[100] The defendants engaged in no activity whatsoever in Oklahoma.[101] The defendants did not close sales, perform services, solicit business, nor advertise in a manner

---

[95] *Id.* at 286-87.
[96] *Id.* at 287.
[97] *Id.*
[98] *Id.* at 288.
[99] *Id.*
[100] *Id.* at 295.
[101] *Id.*

reasonably calculated to reach Oklahoma.[102] They availed themselves of none of the privileges and benefits of Oklahoma law.[103] Jurisdiction could not be established on one isolated occurrence of a single Audi being sold in New York to New York residents that happened to suffer an accident while passing through Oklahoma.[104]

The Court surmised it may be foreseeable the Audi would end up in Oklahoma because it is designed to move about roadways, but that is not enough.[105] "Foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause."[106] However, foreseeability is not entirely irrelevant.[107] "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there."[108] The Court held that the defendants had no contacts, ties, or relations with Oklahoma.[109] Since there was no purposeful availment on behalf of the defendants, it was not reasonable for them to foresee being subject to suit in Oklahoma, therefore jurisdiction was not proper.[110]

---

[102] *Id.*
[103] *Id.*
[104] *Id.*
[105] *Id.*
[106] *Id.*
[107] *Id.* at 297.
[108] *Id.*
[109] *Id.* at 299.
[110] *Id.* at 297.

It is clear, based on this record, Oak Ridge did nothing that could be construed as purposefully availing itself of the privilege of conducting business in Delaware, thus invoking the benefits and protections of Delaware's laws.[111] This Court would exceed the limits of due process if it were to exercise jurisdiction over Oak Ridge.

## 2. *Fairness*

Although this Court has found that Oak Ridge is not subject to personal jurisdiction from either the Delaware Long Arm Statute, or the minimum contacts requirement, the Court will briefly discuss the second prong of the due process analysis.

Not only does a defendant have to have minimum contacts with the forum state to satisfy the due process analysis, but those contacts also must be "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[112]

The Court weighs several factors in determining if jurisdiction is fair under the due process clause. The burden on the defendant is always a primary concern.[113] However that burden is weighed with the other factors. These factors include: "[t]he forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining

---

[111] *Hanson v. Denckla*, 357 U.S. at 253.
[112] *Int'l Shoe Co.*, 326 U.S. at 316.
[113] *World-Wide Volkswagen Corp.*, 444 U.S. at 292.

convenient and effective relief . . .; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of several States in furthering substantive social policies."[114]

Oak Ridge will suffer from the burden of having to litigate in a Delaware court when they are entirely based in South Carolina. In addition, the simple act of selling a truck in South Carolina to a North Carolina company, which is then involved in an auto accident in Delaware years later does not mean Oak Ridge could or should have reasonably foreseen being hauled into court in Delaware. Also, there still has not been confirmation as to when the modifications to the dump truck's PTO system were made, meaning no party is even remotely certain that it was Oak Ridge who made the modifications. It is entirely unreasonable to expect Oak Ridge to defend itself in a Delaware court when they have no purposeful or continuous contacts and have not even been proven as the company who made the alleged hazardous modifications. If any party wishes to proceed against Oak Ridge they are not precluded from doing so in a South Carolina court.

---

[114] *Id.* (citations omitted).

**CONCLUSION**

For the reasons set forth above Defendant Oak Ridge's Motion to Dismiss is

**GRANTED.**

**IT IS SO ORDERED.**

/s/ *Mark H. Conner*

Mark H. Conner, Judge

cc: Prothonotary